## No. 10,007.

### SUCCESSION OF J. B. D. DAUTERIVE.

A will executed in the country, and purporting to be a nuncupative testament, under private signature, in the presence of *three* witnesses only, one of whom did not understand the language in which the testator expressed himself and the will was drawn up, is invalid.

The circumstance that, while it was being dictated, what was then said had been translated to that witness, does not supply the want of knowledge of the language in the latter.

The law disqualifies as a witness to a testament a person who is deaf. A witness who does not understand the language in which a will is dictated and written down is intellect-ually deaf, and practically, is as though he had not attended at all.

A nuncupative will, under private signature, executed before two competent witnesses only is invalid.

APPEAL from the Twenty-fourth District Court, Parish of St. Bernard. *Livaudais*, J.

---

*Sambola & Ducros*, for the Appellant:

1. The irregular or incomplete fulfillment of a formality required by law for the last will and testament, carries with it the nullity of the will in its entirety. C. C. 1581, 1582, 1583, 1595; Duranton, Nos. 21 and 71; 3 Troplong, Dan., No. 1741; 5 L. 396; 5 Zachariæ, § 663; 21 Demolombe, No. 22; 16 Ann. 220; 5 Toullier, No. 410, 11 Ann. 679.

2. He who understands not the language of the testator is not a competent witness to his nun-cupative will. 11 Ann. 679, 8 Merlin, quest., verbo testament xvii, art. 1 and 2, Mack-eldey, § 642, 1 Febrero, Nos. 12 and 16; 14 Ann. 233, 11 L. 365, 4 Marcadé, p. 42; 5 Toullier, No. 393; 9 Duranton, No. 79; 4 Saintespedés-Lescot, Don., p. 97, No. 1038; 2 Mourlon, No. 785; 21 Demolombe, Nos. 196, 197, 251; 13 Laurent, No. 268.

3. Clear proof that no more than three witnesses to a nuncupative will, under private sig-nature, could be had, must be adduced by him who applies for the probate thereof. 6 N. S. 88; 3 Ann. 155; 1 Febrero, No. 4; C. C. 1583; 7 Ann. 118; 1 R. 361; 1 N. S. 400; 12 L. 489; 15 L. 31.

*R. T. Beauregard* and *H. Chiapella*, for the Appellees:

" A nuncupative testament under private signature, must be written by the testator him-self or by any other person from his dictation; or even by one of the witnesses in pres-ence of five witnesses. * * * Or it will suffice if, in the presence of same number of witnesses, the testator presents the paper on which he has written his testament, or caused it to be written out of their presence, declaring to them that the paper contains his will." R. C. C. 1581.

" In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses, or at least by two of them * * * This testament is subject to no other formality than those prescribed by this and the preceding article." R. C. C. 1582.

Nuncupative testaments, under private signature, are valid with three witnesses in the country, if more cannot be had. ·R. C. C. 1583.

" We do not perceive in what particular there was a failure to comply with the requirements of the Code for this kind of testament, which are that it will suffice if in the presence of five witnesses the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will." Bourke vs. Wilson, 38 Ann. 322.

" To constitute a presentation of the will in the sense of the Code it is not necessary that it shall be delivered to the witnesses by the testator with his own hand, and no particular words or set form of speech is necessary to constitute a declaration tha· the instrument is the testator's will." Bourke vs. Wilson, 38 Ann. 322.

" The affirmative answer of a testator to a question whether the paper contains his last will amounts to the presentation prescribed by law. The presentation need not be manual or more formally made." Pfarr vs. Belmont, 39 Ann. 594.

For qualifications of witnesses to wills see R. C. C. 1591.

The nuncupative testament, under private act, is unknown in France. See C. N. 967, et seq. 975, 980.

The qualifications of witnesses to testaments are more numerous and strict than at Rome formerly, or in Louisiana. C. N. 975, 980; Rogron, Code Civil Expliqué, Art. 980, Note 4.

Paillet (droit civil, pp. 358, 359, note 11), commenting on Art. 980 C. N., says: " Le témoin doit-il entendre la langue du testateur ? La loi romaine décide que cela•n'est pas néces-saire, si d'ailleurs il comprend de toute autre manière pour quel acte il a été appelé." L. 20, 56, ff. qui testam.

" Testamentary freedom is too valuable and important in every respect to be restricted without the most stringent reasons." Godden vs. Burke, 35 Ann. 183.

The opinion of the Court was delivered by

BERMUDEZ, C. J. This is an appeal from a decree ordering the ex-ecution of the will of the deceased as being in the nuncupative form, under private signature.

The objections urged against its validity are : *That* it was executed in presence of *three* witnesses in the country, where more could have

been obtained, and *that* one of those witnesses neither understood nor spoke the French language, in which the will was framed.

It is unnecessary to pass upon the first objection.

As to the second, it is fatal to the validity of the will.

The evidence conclusively shows, that the witness Main did not understand or speak the French language.

It is, however, contended that, as the will was translated to him in English, by another witness, while the testator was uttering his intentions—this ceremony supplies the absence of knowledge of the language.

There might be some plausibility in the retort had the will been translated, not only at the time that it was being taken down, but also when it was read to the testator, if he understood the English language; but it does not appear that this was done.

The law is emphatic. It disqualifies a person who is *deaf*, as a witness to testaments, and it exacts that its requirements touching the formalities to which wills are subjected, be strictly observed, under pain of nullity. R. C. C. 1591, 1595.

Under the Roman, the French and the Spanish law, knowledge of the language in which the will is dictated and written down, is deemed indispensable for the validity of the will, when, to be valid, it must have been executed in the presence of witnesses. Mackeldey, § 642; 1 Febrero, No. 12 and 16; 4 Marcadé, p. 42; 5 Toullier, No. 393; 9 Duranton, p. 113, No. 79; Saintespes Lescot Donat, p. 97, No. 1038; 2 Mourlon, No. 785; 21 Demolombe, No. 196-7, 251; 13 Laurent, No. 268; Merlin, vo. Test. (Quest de Droit) xvii, art. 2.

In Hebert vs. Hebert, 11 L. 364, and Breaux vs. Gallusseaux, 14 Ann. 233, in this State, it has been held that a witness who does not understand the language in which the will is couched, is incompetent, and the testament is a nullity.

Had the witness Main, in the instant case, when interrogated, been asked to state his knowledge of the contents of the will, as acquired from the reading *only*, and not from the translation, whatever it be, previously made to him, assuredly he would have remained perfectly dumb. From a legal standpoint, he was intellectually deaf, and disqualified from service.

It is apparent that it was impossible for him to have compared the translation in English with what was read in French, and that as to him, the will was no more read than if he had not been at all in attendance.

It does not appear that the testator understood the English language,

and that he was on that account able to ascertain whether the translation was or not faithful.

While fully appreciating the utterance of our immediate predecessors touching the sacredness of the will of the departed ones, which should be respected as their graves, (30 Ann. 217), we cannot say that the ceremonies observed at the making of what is termed the will of the deceased have impressed upon it a sanctity which shields it from the assault now made, and we are driven to the necessity of declaring that one of the three subscribing witnesses being incompetent, the ceremony has taken place before *two* witnesses only, while the law imperiously requires that *three* at least should attest its execution.

The pretended will must, therefore, be considered as having never been made, and having no legal existence.

It is, therefore, ordered and decreed, that the judgment appealed from be reversed, and that the application for the probate and execucution of the will be rejected, with costs in both courts.