183 So.2d 436 (1966)
Succession of John Howard MICHIE.
No. 10516.
Court of Appeal of Louisiana, Second Circuit.
January 26, 1966.
Rehearing Denied March 1, 1966.
*437 Madison, Madison, Files & Garrett, Bastrop, for appellants.
McHenry, Snellings, Breard, Sartor & Shafto, Monroe, Joe Rolfe White, Bastrop, for appellees.
Before HARDY, AYRES, and BOLIN, JJ.
AYRES, Judge.
The purported last will and testament of the late John Howard Michie was decreed null and void. From a judgment accordingly denying its probate, the proponents thereof appealed.
The instrument, purportedly executed in accordance with the provisions of Act 66 of 1952, LSA-R.S. 9:2442 et seq., is in the following form:
 "LAST WILL AND TESTAMENT
 of
 J. HOWARD MUCHIE [sic]
 "My BEQUESTS:
"To my brother D. C. Michie's children: "To David C. Michie, Jr: "Land known as old Michie Land, lying West of D. C. Michie, Sr. home, containing 140 acres more or lessall open land, lying south of the Sisson Place, bounded on north by John McAdams Place, Plus $5000.00 (Five Thousand Dollars Cash)
"To Mrs. Bob Hurse, NEE Michie:
"One 40 acre tract of land, all open, called Doaks Deadning, lying south of Clarance Clark's Place; north of McGee Place, bounded on west by Public road running by John Jones Place, Plus $5000.00 (Five Thousand Dollars in Cash)
"To Kate Pinkston, NEE MICHIE: "$5000.00 (Five Thousand Dollars in Cash)
"To John Grey Michie:
"$5000.00 (Five Thousand Dollars in Cash)
"To children of my sister, Mary Vaughan, Nee Michie, to wit: Charles Vaughan; Elise Montgomery; Martha Floyd; Elizabeth Yancy; All my assets, not specifically *438 bequeathed to my brother D. C. Michie's children as described hereinabove, Sister Mary Vaughan's children to have share and share alike and jointly lands, buildings, stocks, bonds, cash and any and all other assets including Accounts and Notes receivable. Specifically all assets not hereinabove bequeathed to David C. Michie, Jr.; Mrs. Bob Hurse, Kate Pinkston and John Grey Michie.
"This is my last WILL AND TESTAMENT, and it cancels and supersedes any and all other WILLS or documents that I have executed in the past relative to disposition of my properties at my DEMISE.
"I am in sound mind and memory. This January 16th 1965.
"WITNESS:
/s/ A. B. Sisson
 /s/ J. Howard Michie
/s/ A. D. Fowler
"This is to certify that the signature of J. Howard Michie to this instrument is his own handwriting.
 "Jan. 16-1965
 /s/ Thos. H. B. Rankin
 Notary Public"
The aforesaid statute provides that, in addition to the methods prescribed in the Revised Civil Code, a will shall be valid if in writing and signed by the testator in the presence of a notary public and two witnesses, in the following manner: (1) In the presence of the notary and both witnesses, the testator shall signify to them that the instrument is his will and shall sign each sheet thereof; (2) the notary and both witnesses sign at the end of the will (a) in the presence of the testator and (b) in the presence of each other; and (3) that the foregoing facts shall be evidenced in writing above the signatures of the notary public, the witnesses, and the testator at the end of the will.
The last of the aforesaid requirements was not complied with. The will, as reference thereto will disclose, contains no attestation clause as required by the statute. This fact, apparent on the face of the instrument, is conceded by both the proponents and the opponents of the will. The opponents contend that this requirement of the statute is essential and that its absence is sacramental to the validity of the will. The proponents contend, however, that a substantial compliance with the terms and requirements of the statute, which may be established by extrinsic evidence, is sufficient to establish its validity.
The attestation clause serves, as was held in Succession of Eck, 233 La. 764, 98 So.2d 181, 184 (1957), as a certificate certifying to the facts and circumstances attending the execution of the will.
The aforesaid statutory requirements for confection of a will under the terms of the statute are, in our opinion, mandatory and thus essential to its validity. The language employed is clear and unambiguous. For instance, the statute provides that (1) the will shall be in some form of writing; (2) it shall be signed by the testator in the presence of a notary public and two witnesses; (3) in the presence of the notary and both witnesses, the testator shall signify to them that the instrument is his will; (4) the testator shall sign his name on each separate sheet of the instrument; (5) if the testator declares that he is not able to sign his name because of some physical infirmity, express mention of his declaration and of the cause that hinders him from signing must be made in the act and he shall then affix his mark on each separate sheet of the instrument; (6) the notary and both witnesses must sign their names at the end of the will in the presence of the testator and in the presence of each other; and (7) "The foregoing facts shall be evidenced in writing above *439 the signatures of the notary public and witnesses and the testator at the end of the will." LSA-R.S. 9:2442(3).
Only the form of the attestation clause is permissible and subject to any variation. In this regard the statute provides that the declaration may be in a form prescribed therein or in "a form substantially similar thereto." LSA-R.S. 9:2442(3).
The Succession of Eck, supra, supports the conclusion that an attestation clause is a mandatory requirement. There it was held that the signatures "must appear under the attestation clause." Clearly, it would have been a matter of no consequence as to the location of the signatures with relation to an attestation clause if no such declaration were essential. See, also: Succession of Nourse, 234 La. 691, 101 So.2d 204 (1958).
The requirement of the statute as to the necessity that a will contain an attestation clause is not new to our law. For instance, a nuncupative testament may be made by public act. LSA-C.C. Art. 1577. In the confection of such an act, LSA-C.C. Art. 1578 provides:
"The nuncupative testaments by public act must be received by a notary public, in presence of three witnesses residing in the place where the will is executed, or of five witnesses not residing in the place.
"This testament must be dictated by the testator, and written by the notary as it is dictated.
"It must then be read to the testator in presence of the witnesses.
"Express mention is made of the whole, observing that all those formalities must be fulfilled at one time, without interruption, and without turning aside to other acts."
The Code, in Art. 1579, further provides:
"This testament must be signed by the testator; if he declares that he knows not how, or is not able to sign, express mention of his declaration, as also of the cause that hinders him from signing, must be made in the act."
Thus, by a comparison of the provisions of the statute herein concerned with the provisions of the aforesaid articles of the Code, the similarity is readily observed.
A nuncupative will by public act signed by an "X" mark of the testatrix was held void because it did not contain the mandatory statutory declaration as prescribed under LSA-C.C. Art. 1579. Succession of Guidry, 145 So.2d 613, 617, La.App., 4th Cir. 1962 (certiorari denied, 1963).
There the court pointed out that
"The obvious purpose and intent of LSA-R.C.C. art. 1579 is clear and unmistakable. In essence, it contemplates that the testator must sign his last will and testament if he knows how to sign his name and is physically capable of doing so. If, however, the testator cannot sign or declares either that he knows not how to sign or is unable to sign, the article in question, by positive, unequivocal language, requires that express mention of his declaration as well as the cause which hinders him from signing must be made in the instrument itself."
Again, in the Succession of Pizani, 146 So.2d 16, 17, La.App., 4th Cir.1962 (certiorari denied, 1963), a nuncupative will by public act was held void because it did not recite on its face another of the required declarations, that is, that the testament was read to the testatrix in the presence of the witnesses. The court cited Succession of Sparks, 12 Rob. 35 (1845), wherein the Supreme Court stated:
"It is one of the essential requisites of the law with regard to the form of a nuncupative testament by public act, that it should be read to the testator in presence of the witnesses, and that express *440 mention should be made therein of the manner in which the formalities, upon which its validity depends, have been fulfilled. Civ.Code, Art. 1571. Those formalities must be observed, and the noncompliance with any one of them is sufficient to invalidate it. Civil Code Art. 1588 [1595]. Now, can it be even inferred from the declaration of the notary here, that the will of Mrs. Sparks was read to her in the presence of the three witnesses who attended its execution? The notary declares, that it was dictated to him, in the presence of the witnesses; that it was written by himself, without interruption, and without turning aside to other acts; but he only states that he read the act to the testatrix, who declared that she understood it, and approved it in all its contents. This is clearly insufficient. He should have made express mention of the fact that the testament was read to the testatrix in presence of the witnesses; as, although such fact may exist, and it might be in the power of the party to establish it by parol testimony, it is a well settled doctrine, that a testament must bear on its face the evidence of a strict compliance with the legal formalities, and that no parol proof can be admitted to show that such formalities, not apparent from the instrument itself, have been really fulfilled. Le Blanc v. Baras' Heirs, 16 La. 80." (Emphasis supplied.)
In Le Blanc v. Baras's Heirs, 16 La. 80, 83 (1840), the court pointed out, with reference to the requirements of LSA-C.C. Art. 1578 [formerly 1571], that

"The Code not only requires these formalities to be pursued, but provides that express mention of their fulfilment must be made in the will itself, when executed before a notary public. It is on a strict compliance alone with these formalities, that the law is willing to recognize the testament as legal, and to suffer the established order of succession to yield to the will of the testator." (Emphasis supplied.) See, also: Succession of Wilkin, 21 La.Ann. 115 (1869); Succession of Wilson, 177 La. 119, 148 So. 1 (1933).
Moreover, under unequivocal language of the Code, the prescribed testamentary formalities are essential to the validity of a will. In this regard LSA-C.C. Art. 1595 provides:
"The formalities, to which testaments are subject by the provisions of the present section, must be observed; otherwise the testaments are null and void."
In line with the aforesaid principles, the rule is well established in the jurisprudence of this State that a nuncupative testament by public act makes full proof of itself, and that evidence aliunde may not be received to establish that the requisite formalities not apparent from the instrument itself have been fulfilled. Le Blanc v. Baras's Heirs, supra; Succession of Sparks, supra; Swift v. Swift, 9 La.Ann. 117 (1854); Shannon v. Shannon, 16 La. Ann. 8 (1861); Succession of Wilkin, supra; Succession of Carroll, 28 La.Ann. 388, 391 (1876); Succession of Dorries, 37 La.Ann. 833, 834 (1885); Succession of Wilson, supra; Succession of Guidry, supra.
No reason has been advanced, and we know of none, why the rule should not likewise apply to wills executed pursuant to the aforesaid statute which requires compliance with similar formalities.
The purpose of the statutes prescribing formalities for the execution of wills is to guard against mistake, imposition, undue influence, fraud, or deception, and to afford a means of determining their authenticity and to prevent the substitution *441 of some other writing in place thereof. And, however harsh the application of the rule may appear in a given instance, such fact does not justify any deviation therefrom since any material relaxation of the statutory rule will open up a fruitful field for fraud, substitution, and imposition. Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938).
It would perhaps be amiss not to point up the lack of a proper relationship between the public and the legal profession as is emphasized by the facts established in this case. The establishment of such a relationship is a two-way street, the success of the operation of which is dependent upon the recognition and discharge of mutual obligations and responsibilities. Such relationship is dependent not only upon mutual confidence, trust, and fair dealing but upon the recognition and acceptance by the public of the profession's role with reference to matters legal.
Instead of availing himself of competent professional advice and assistance, decedent sought the services of a notary public, an old and trusted friend, without either legal training or experience in the preparation of wills; this was his first attempt.
It is as illogical and unwise to secure the services of one unlearned and unskilled in the law to perform a legal task as it would be to engage the services of a cobbler, adept in the cutting of leather, to perform a major surgical procedure.
It is most regrettable, however, that the wishes of the decedent may not be carried out and that those who would have been legatees under his will are denied the major portion of an estate valued at more than a half million dollars. The fault lies not with the law or the legal profession but is due to the failure of one in need to avail himself of the profession's services.
For the reasons assigned, the judgment appealed is affirmed at proponents-appellants' cost.
Affirmed.