212 So.2d 523 (1968)
Succession of Della Bordelon DAUZAT.
Virgie DAUZAT et al., Plaintiffs-Appellees,
v.
L. B. DAUZAT et al., Defendants-Appellants.
No. 2335.
Court of Appeal of Louisiana, Third Circuit.
July 2, 1968.
Riddle & Knoll, by Charles A. Riddle, Jr., and Laborde & Lafargue, by Edwin L. Lafargue, Marksville, for defendants-appellants.
Roy & Roy, by Chris J. Roy, Marksville, for plaintiffs-appellees.
Before FRUGE, HOOD and LEAR, JJ.
HOOD, Judge.
This is an action to annul a will. The testatrix, Mrs. Della Bordelon Dauzat, left five children surviving her at the time of *524 her death. This suit was instituted by three of these survivors, Virgie Dauzat, Zepherina Dauzat Gaspard and Linster Dauzat McNeal, against the other two surviving children, L. B. Dauzat and Mildred Dauzat Gaspard. Judgment was rendered by the trial court in favor of plaintiffs, decreeing the will to be null and void, and defendants have appealed.
The testatrix died on December 3, 1965, leaving what purports to be a nuncupative will by public act, dated October 11, 1965. Shortly after her death, and in response to a petition filed by L. B. Dauzat and Mildred Dauzat Gaspard, the will was probated, and pursuant to its provisions L. B. Dauzat was confirmed as testamentary executor of the Succession of Mrs. Della B. Dauzat, deceased. A detailed descriptive list of the property belonging to the succession was made, and later the executor filed a Tableau of Distribution, with a petition praying that he be authorized to pay the debts and charges listed in that tableau.
Plaintiffs in the instant suit filed an opposition to the Tableau of Distribution. They also filed a petition in the same proceeding seeking to have the will decreed to be null and void on several grounds, one of which is that it was not dictated by the testatrix and written by the notary as it was dictated, all as required by LSA-C.C. art. 1578. Defendants answered the petition, alleging that the will was dictated by the testatrix and was written by the notary as it was dictated.
The will on its face appears to have been executed by the testatrix before a notary public and three witnesses in Hessmer, Louisiana. The document recites that the testatrix dictated the will to the notary in the presence of the three witnesses therein named, and that the notary "received the same from her dictation and wrote down the same as it was dictated." It also recites that the notary then read the will to the testatrix in the presence and hearing of the aforesaid witnesses, that the testatrix declared to him and to the witnesses that she was entirely satisfied with it, and that all of this was done at one time, without interruption and without turning aside to any other act. The will was signed by the testatrix, by the three witnesses named in that document and by the notary public.
Mrs. Dauzat, the testatrix, was ill and was confined to the Hessmer Nursing Home at that time and the will was written and signed in her room in that nursing home. All of the persons who signed the will, together with three other persons, were present in the room during the entire time the will was being confected. The three other persons who were present in the room during that time were L. B. Dauzat, a defendant in this suit and the principal legatee in the will, and two patients who shared that room in the nursing home with the decedent.
Although Mrs. Dauzat was ill, the evidence shows that she was alert, that she was not under the influence of drugs, that she was aware of what she was doing and that she had the mental capacity to make at least some type of will.
Plaintiffs contend that the testatrix was unable to speak or understand the English language, that the notary before whom the will was executed could speak and understand only the English language, and that since the will was written by the notary in English, the testatrix could not have dictated it in that language and the notary could not have written it as it was dictated.
Two of the three persons who were named in and who signed the will as witnesses testified at the trial, the third such witness being unavailable to any of the parties at the time the matter came up for hearing. The substance of the testimony of these two witnesses is that the testatrix spoke only in French, that her son, L. B. Dauzat, translated and announced in English the things she said, and that the notary thereupon wrote down in English the words which were spoken by the interpreter, *525 L. B. Dauzat. All three of the plaintiffs, who were children of the testatrix, testified that the latter could not speak English, that she could not have dictated the will in English, and that she obviously did not understand what was said when the notary read the will back to her in the English language. The husband of one of the plaintiffs also testified that the testatrix could not speak English, and a notary public who participated in the confection of another will for the testatrix about a year earlier testified that on that occasion he conversed with Mrs. Dauzat only in French.
The notary before whom the will at issue here was executed testified that he talked to the testatrix immediately before the will was confected, that he spoke to her in English, that she also used the English language in talking to him, and that he was convinced that she fully understood all that was said. He stated that L. B. Dauzat said something to the testatrix in French while the will was being written, but that at the notary's request Dauzat said nothing more to her in that language until after the will had been completed. With reference to the question of whether the testatrix actually dictated the will, the notary testified:
"I told her what I was there for and that I understood that she had sent for me and I explained to her about the old will and then she said she wanted to make a will and that's when we got into the business of making the will and after she said she wanted to make a will and that she wanted to leave as much as she could to Mr. Dauzat, I could. * * * I proceeded to type it myself on this little television table, which was quite awkward, and we verified again what she told me, as to what disposition she wanted to make. * * *"
The notary also stated that after the will was written it was "re-verified" by the testatrix, that he then read the entire will back to her in the presence of the witnesses and that she signified that it was her will and that "that was the way she wanted it." The record does not indicate that the notary testified specifically that the will was dictated to him by the testatrix and that it was written by him as it was dictated.
Both of the defendants, L. B. Dauzat and Mildred Dauzat Gaspard, testified that their mother, the testatrix, could speak English. Mr. Dauzat testified that she "could keep a conversation in English if you'd just give her a little time," that she "didn't very well speak good English," but that she "spoke well enough to be understood." He denied that he served as an interpreter while the will was being completed. He stated that once his mother asked him in French if she had worded the things right to the notary and that Dauzat told her he had nothing to do with the will. Mrs. Gaspard testified that her mother could speak "broken English, but yet she'd make you understand what she meant."
Mrs. L. B. Dauzat and a neighbor of the testatrix also testified that the latter could speak and understand the English language, and thus intimating that she could have dictated the will in that language.
The trial judge concluded that the testatrix was unable to speak the English language, that in confecting the will, her son, L. B. Dauzat, served as an interpreter, that she used the French language to inform her son of her wishes, and that her son then translated her words into English for the notary. In concluding that the will was null and void, the trial court said:
"Certainly the will was not written as dictated by the testatrix here; she gave her wishes in French; the Court believes they should have been written in French, so that when same was read back to her, she could have known and understood whether that reading incorporated what she had said. Here, she had to depend upon what her son said; so did the Notary. So it was not received as dictated by her, nor read back to her as dictated."
*526 The trial judge's findings of fact, particularly those involving the credibility of witnesses testifying before him, are entitled to great weight and his conclusions as to the facts will not be disturbed unless found to be clearly erroneous. Gulf Machine Shop v. Poynter, 192 So.2d 606 (La.App.3d Cir. 1966).
In the instant suit we cannot say that the trial judge erred in concluding that the will was not dictated to the notary in the English language, that being the language in which the will was written. We also agree with the trial judge's conclusion that the will was read back to the testatrix in English, a language which she did not use in dictating it and one which she did not understand.
We think the law of this state is clear that a nuncupative will by public act is null if it is written by the notary in a language which is different from that used by the testator in dictating it. The will also is null if it is read back to the testator in a language which the latter does not understand. LSA-C.C. art. 1578; Debaillon v. Fuselier, 159 La. 1044, 106 So. 559 (1925); Succession of Centanni, 142 So.2d 636 (La.App.4th Cir. 1962); Hebert's Heirs v. Hebert's Legatees, 11 La. 361 (1837); Gonzales v. Gonzales, 13 La. 104 (1839); Succession of D'Auterive, 39 La. Ann. 1092, 3 So. 341 (1887); Lataprie v. Baudot, 152 La. 177, 92 So. 776 (1922); Heirs of Bordelon v. Heirs of Baron, 11 La.Ann. 676 (1856); Planiol, Treatise on the Civil Law (English Translation by Louisiana State Law Institute), Vol. 3, Part 2, Section 2708, page 329.
The facts in Debaillon v. Fuselier, supra, are similar to the facts in the instant suit. There, the will was dictated in French and was written in English, but the notary who understood both languages read the will back to the testator in both the English and the French languages. As in the instant suit, the testator did not understand the English language. Our Supreme Court, in holding that the will was null, said:
"This is another case in which we have no occasion for deciding whether a nuncupative testament by public act is null if it be not written in the language in which it was dictated. It is not necessary to decide whether this will would be valid if the testator had understood the English as well as the French language. The will is null because the testator did not understand the language in which it was written by the notary and read to the testator. In realityand for the purpose for which the law requires that such a will must be read to the testatorthis will was not read to him."
LSA-C.C.P. art. 2933 provides that the plaintiff has the burden of proving the invalidity of the testament. And, we are aware of the line of jurisprudence which holds that a legal presumption exists in favor of the validity of the testament. Succession of Vicknair, 126 So.2d 680 (La.App.4th Cir. 1961); Succession of Bradford, 130 So.2d 702 (La.App.2d Cir. 1961). We also agree with defendants that the proof of noncompliance with the formalities required in executing a will must be peculiarly strong to overcome the presumption in favor of the will. Bernard v. Francez, 166 La. 487, 117 So. 565 (1928).
In the instant suit, however, we have concurred with the trial judge in his finding that the testatrix used the French language in dictating the will, that the will was written in English, and that it was read back to the testatrix in English, a language which she did not understand. Under these facts and the established jurisprudence we think there has been a failure to comply with the provisions of LSA-C.C. art. 1578 in confecting the will. We agree with the trial judge, therefore, that the will is null and void since it was not written by the notary as it was dictated, and since it was not read back to the testatrix in a language which she understood.
*527 Defendants argue further that the trial judge erred in considering the evidence which tends to show that the testatrix could not speak and understand the English language, because no allegations to that effect were contained in the pleadings, and defendants timely objected to such evidence on the ground that it constituted an attempt to enlarge the pleadings. The trial judge allowed the evidence to be presented subject to the objection, and he reserved his ruling as to its admissibility. When the case was decided on its merits, the trial judge then concluded that the evidence was properly admitted and should be considered.
Among the grounds alleged by plaintiffs for annulling the will are the following:
(f) Petitioners allege on information and belief that the Last Will and Testament of the Testatrix, Della B. Dauzat, is null and void for the reason that it does not comply with the requirements of Article 1578 of the Louisiana Civil Code in that it was not received as such by a Notary Public in the presence of the three witnesses; that it was not dictated by the testatrix and was not written by the Notary as dictated; that it was not read to the testatrix in the presence of the witnesses, and was not signed by the testatrix."
We think the allegations to the effect that the will "was not dictated by the testatrix," that it "was not written by the notary as dictated," and that it "was not read to the testatrix in the presence of the witnesses" are sufficiently broad to allow the evidence which was considered by the trial court. This evidence merely tends to show that the testatrix was unable to dictate the will which was actually written, that the notary did not write the will in the language and substantially in the words used by the testatrix and that the notary did not read the will back to the testatrix in a language which she used in dictating it and in a language which she understood. We thus find no error in the ruling made by the trial judge on the admissibility of this evidence.
Since we have concluded that the will is null and void for the reasons above set out, it is unnecessary for us to consider the other grounds alleged by plaintiffs as the basis for these demands.
The trial judge taxed the costs of the proceedings against L. B. Dauzat, personally, and he argues that this was improper. We feel, however, that it was within the discretion of the trial court to assess the costs as he did. LSA-C.C.P. arts. 1920, 2825.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.