254 So.2d 289 (1971)
Succession of Annie STAGGERS.
No. 4544.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
Rehearing Denied October 6, 1971.
Writ Refused November 23, 1971.
Roberts & Sanders, A. Russell Roberts, Metairie, for Mrs. Alice Staggers Schmidt, plaintiff-appellant.
Denechaud & Denechaud, Thomas A. Rayer and Otto B. Schoenfeld, New Orleans, *290 for Mrs. Ruth Staggers Kelieher, testamentary executrix, et al., defendants-appellees.
Before REDMANN, LEMMON and STOULIG, JJ.
STOULIG, Judge.
The plaintiff, Mrs. Alice Staggers Schmidt, has made a twofold attack upon what purports to be the testament of her late sister, Annie Staggers: an opposition to probate itself and a formal petition to annul the will. The grounds upon which the opposition to probate rests have been incorporated into the action to annul, and the matter adjudicated as a related whole. The trial court dismissed all opposition to the testament and the plaintiff has appealed.
On July 12, 1956, the will of Annie Staggers was executed in statutory form (LSA-R.S. 9:2442) before Frank Tournier, a notary public commissioned and qualified in and for the Parish of Orleans. It is undisputed that on this same date the testator was an in-patient at Ochsner Foundation Hospital in Jefferson Parish. Several issues are raised by the opposition to probate and the action of nullity consisting of a plea of judicial admission; the failure to comply with the statutory requirements for probate; and the validity of the instrument for the want of execution before a notary public duly commissioned for the parish in which it was signed.
Since the action of nullity was instituted within three months of the date of probate, under LSA-C.C.P. art. 2932 the proponents of the testament have the burden of sustaining its validity. Article 2932 provides:
"The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law."
Also in an opposition to a probate of a will, under LSA-C.C.P. art. 2903 the burden of proof of the authenticity of the testament and its compliance with all of the requisites of law rests with its proponent. Thus, from the foregoing provisions of the Code of Civil Procedure, the proponent bears the burden of sustaining the validity of the will against each of these attacks.
In connection with the plea of judicial admission, the appellant urges that in Article VI of the petition to annul she alleges:
"No will was found in the said box, and the Notary Public's proces verbal, when filed, will reflect that fact and petitioner alleges that the decedent left no will whatever, and died intestate."
And in their answer the defendant admits this allegation. Plaintiff submits this constitutes a judicial admission which is binding upon the proponents of the testament.
We see no merit in this argument. Defendants maintain that the admission does no more than agree that no will was found in the decedent's bank box. Considering the multiple disconnected averments of this allegation, it is readily understandable how the defendants could have inadvertently overlooked its full significance. The argument of the defendants becomes more persuasive and that of the plaintiff less tenable when considered in relation to the fact that the petition to probate the testament of the decedent was filed on June 17, 1969, and the opposition to probate by this plaintiff on June 20, 1969, both of which were prior to the filing of the petition to annul on June 23, 1969, in which is set forth the allegation forming the basis of the plea of judicial admission. There has never been any question that the will of January 12, 1956, does exist, and the plaintiff, like this court, must abide by that *291 truth. In our view, an erroneous declaration in pleadings cannot of itself serve to destroy a validly confected testament or deny the right of probate. Nor do the responsive pleadings of the defendants under these circumstances constitute a judicial admission.
The second objection to the probate of the testament is more technical. Plaintiff argues that Mr. Tournier, in his testimony, failed to identify the signature as being that of the decedent. LSA-C.C.P. art. 2887, the governing statute, reads as follows:
"A testament confected in accordance with R.S. 9:2442 must be proved by the testimony of the notary and one of the subscribing witnesses, or of two of these witnesses, that it was signed by the testator. If only the notary, or only one of these witnesses is living in the state and can be located, his testimony that the testament was signed by the testator will be sufficient.
"If the notary and all of the subscribing witnesses are dead, absent from the state, or cannot be located, the testament may be proved by the testimony of two credible witnesses who recognize the signature of the testator, or of the notary, or the signatures of two of the subscribing witnesses."
It should be noted that the testament was proven and ordered probated prior to the enactment of Act 475 of 1970, which amended LSA-C.C.P. art. 2887. The amendment does not alter or change the aforecited sections. The implication of the argument is that the notary and/or subscribing witnesses must recognize and identify the signature on the testament as being that of the testator. This contention cannot be maintained. Article 2887 specifically provides that subscribing witnesses need only declare that the testator signed the will in their presence. A recognition of signature is a different matter and is required only when the testament is proved by witnesses other than subscribing parties to the instrument.
The crucial issue of dispute in this matter concerns itself with the manner in which the will was confected, as opposed to either the capacity of the testatrix or the disposition of her property. Simply stated, it is whether the will was executed by the testatrix in the Parish of Orleans in the presence of the notary and two subscribing witnesses, as required by LSA-R. S. 9:2442, or if, as contended by the opponent, it was signed by the decedent in Ochsner Foundation Hospital, located in the Parish of Jefferson, in the presence of the notary public commissioned for Orleans Parish (who returned to his office before affixing his jurat and having it attested to by the subscribing witnesses).
The plaintiff has introduced hospital records and the testimony of hospital nurses, all offered to prove it unlikely that Annie Staggers could or would have left the hospital and traveled to New Orleans in order to execute the testament. As a proposition in abstract logic this may be so.
The weight of the direct evidence however (the evidence offered to prove what actually happened) is to the contrary. Mr. Tournier testified unequivocally that the will was executed in his office in Orleans Parish in his presence and in the presence of the two witnesses required by law. One of the witnesses, Erma Metrejean (Mrs. Douglas Youngblood), was reached through interrogatories and she substantiates Tournier's evidence. Her testimony is that the will bears her signature as a subscribing witness; that she never witnessed a document which was not actually signed in her presence; and that she only witnessed documents for her employers in their law offices in Orleans Parish. Finally we note that the hospital records for July 12, 1956, reflect by appropriate entry that the decedent had the authorization of her physician to leave the hospital for a few hours on that date.
*292 No useful purpose would be served by a further analysis of the testimony presented. Suffice it to state that the notary public and subscribing witnesses were the only parties who testified that they saw the decedent sign her will, which they stated occurred in the law office of the notary located in Orleans Parish. In weighing the sufficiency of evidence tendered by the proponent in the discharge of the obligations imposed by LSA-C.C.P. arts. 2903 and 2932, consideration must be given to the presumption of validity existing in favor of the testament until the contrary is established. Succession of Lambert, 185 La. 416, 169 So. 453 (1936); Succession of Bradford, 130 So.2d 702 (La. App.2d Cir. 1961); Succession of Vicknair, 126 So.2d 680 (La.App. 4th Cir. 1961). Also to be taken into consideration is the object of the statutory formalities required in the confection of wills, which has been construed in the case of Howard v. Gunter, 215 So.2d 222, 224 (La.App.3d Cir. 1968) as follows:
"The purpose of the statute's prescribing formalities for the execution of wills is to guard against a mistake, imposition, undue influence, fraud, or deception, and to afford a means of determining their authenticity and to prevent substitution of some other writing in place thereof. Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938), Succession of Michie, 183 So.2d 436 (La.App.2d Cir., 1966), writs refused 249 La. 118, 185 So.2d 529 (1966)."
Proof of nonobservance of these formalities must be exceptionally compelling in order to rebut the presumption of validity. As stated in Succession of Dauzat, 212 So.2d 523, 526 (La.App.3d Cir. 1968):
"* * * And, we are aware of the line of jurisprudence which holds that a legal presumption exists in favor of the validity of the testament. * * * We also agree with defendants that the proof of noncompliance with the formalities required in executing a will must be peculiarly strong to overcome the presumption in favor of the will. Bernard v. Francez, 166 La. 487, 117 So. 565 (1928)."
Applying this jurisprudence to the facts of the instant matter, we are constrained to hold that the proponents have presented sufficient evidence to preponderate in favor of the conclusion that the will of Annie Staggers was confected in accordance with the provisions of LSA-R.S. 9:2442. Confronted with the difficult task of proving a negativethat Annie Staggers did not leave the hospital in Jefferson Parish on the date she purportedly executed the will in Orleans Parishthe opponent has not successfully submitted peculiarly strong or compelling proof of noncompliance sufficient to overcome the presumption of validity or rebut the probative value of opposing evidence. Mere suspicion, uncorroborated by other circumstances, does not constitute fact.
The issue of the execution of the will is one purely factual in nature. The trial judge, being in a position to observe the attitude and demeanor of the witnesses, is better able to make determinations of credibility and his evaluation of the testimony must be respected. Unless manifestly erroneous, his findings should not be disturbed. Succession of Dauzat, supra, and Succession of Bradford, supra. There is no evidentiary basis to warrant the finding that the trial court's conclusions were manifestly erroneous and contrary to the law and evidence.
The validity of the confection of decedent's will being the sole issue presented by this appeal, we believe it appropriate that the costs be assessed against testatrix's succession.
For these reasons, the judgment appealed from is affirmed. All costs are to be borne by the appellee.
Affirmed.

*293 On Application for Rehearing
PER CURIAM.
The opinion of the court makes reference to the witnesses' testifying "that they saw the decedent sign her will." This led to the inference that both subscribing witnesses gave testimony on the trial of the matter, whereas, in fact, only the testimony of one of the witnesses, a nonresident of this State, was adduced through written interrogatories. In any event, this error is inconsequential as the proof submitted in connection with the probate of the statutory will (LSA-R.S. 9:2442) adequately complies with the requirements of LSA-C.C.P. art. 2887 since, where "only the notary * * * is living in the state and can be located, his testimony that the testament was signed by the testator will be sufficient."
The application for rehearing is denied.