DOUCET, Judge.
Virginia Courville Johnson died on August 30, 1980 in Breaux Bridge, St. Martin Parish, Louisiana, leaving behind a testament in the form of a nuncupative will by private act, confected on December 17, 1968, in the French language. When the testament was presented for probate, opposition was made by appellants herein on the grounds that said will was not witnessed by a sufficient number of competent witnesses as required by Civil Code Article 1581. More specifically, appellants alleged that two of the five witnesses were not sufficiently fluent in the French language to be witnesses to a will written in French for a French speaking testatrix. Additionally, the opponents to probate alleged that the petitioners in favor thereof failed to carry their burden of proof as required by law. After a contradictory rule to probate hearing, at which testimony of three of the witnesses was received, the district judge ordered the will probated forthwith. From that judgment opponents appeal, maintaining the same issues in their specification of errors. We affirm.
*641 The evidence indicates compliance with statutory requirements [1]; that it was written at the instruction of the deceased, that it was read to all five witnesses, that the entire proceeding was conducted in French, that the document contains the testatrix’s mark and the signature of all of the witnesses, and that all of the witnesses resided in Lafayette Parish, Louisiana, at the time of the execution. Contested is the competency of two of the witnesses, Sybil Guilliot Callier, and Susan Gautreaux, the latter being a nonresident of Louisiana and unavailable to testify. Another witness was deceased, however, his competency was stipulated. English was the primary language of all of the witnesses and French was utilized secondarily. The testatrix spoke only French. When called upon to testify, Mrs. Callier admitted that she could neither read nor write the French language, however, she could “make out, more or less, what was being said.” Although some words were beyond her French comprehension the trial judge was of the opinion that she possessed sufficient understanding so that she knew when the testator was questioned about whether the document expressed her wishes and understood the testatrix’s response thereto. Appellants assign as error the trial judge’s conclusion that Mrs. Callier’s understanding the gist of the testament was sufficient to qualify her as a witness.
In construing testaments the intent of the testator or testatrix must be ascertained and given effect if such can be accomplished without departing from statutory requirements for a will. A corollary rule, also designed to respect the last wishes of the dead, embodies the maxim, “Magis ut res valeat quam periat”; that a “disposition must be understood in the sense in which it can have effect, rather than that in which it can have none”. La. Civil Code, Arts. 1712, 1713. Carter v. Succession of Carter, 332 So.2d 439 (La.1976); Succession of Roussel, 373 So.2d 155 (La.1979); Succession of Garrett v. Garrett, 295 So.2d 563 (3rd Cir. 1974), writ denied 299 So.2d 800. The purpose of the statutory requirements is to guard against mistake, undue influence, fraud or deception, and to ensure means to determine the will’s authenticity. Soileau v. Ortego, 189 La. 713, 180 So. 496 (1938); Howard v. Gunter, 215 So.2d 222 (La.App. 3rd Cir. 1968); Lee v. Kincaid, 359 So.2d 232 (La.App. 2nd Cir. 1978). Where there is no suggestion of such, substantial compliance with the formalities is sufficient to sustain the will’s validity, as courts will not require strict, technical, and pedantic compliance in the form or language. Stephens v. Adger, 227 La. 387, 79 So.2d 491 (1955); Succession of Morgan, 257 La. 380, 242 So.2d 551 (1970). Where noncompliance with the formalities is alleged, proof of same must be peculiarly strong to overcome the presumption in favor of the will. Dauzat v. Dauzat, 212 So.2d 523 (La.App. 3rd Cir. 1968); Bernard v. Francez, 166 La. 487, 117 So. 565 (1928).
As appellant correctly points out, a witness to a testament must understand the language in which the testament is dictated and written. Succession of Centanni, 142 So.2d 636 (La.App. 4th Cir. 1962); Succession of D’Auterive, 39 La.Ann. 1092, 3 So. 341 (1887). However, all of the cited *642 cases involved situations wherein the testator and/or witness had no knowledge of the language in which the testament was being confected. Counsel has cited no authority, and we have found none, in support of his proposition that formal schooling in French culminating in the ability to fluently write and speak same is a prerequisite to qualification as a witness to a French testament. If such were the law, few if any French testaments could be confected in this state. In the present case the mother’s only language was French, yet she could not read or write in French. If the same literacy requirement advocated by appellants as to witnesses was applied to a testatrix, one in her position would effectively have the legal regime forced upon her. Indeed, few English testaments could be confected, if such a literacy standard were imposed in light of the garrulous verbiage often contained therein. A person may be a competent witness to prove the genuineness of a will without being able to decipher all the words written. Succession of Stewart, 51 La.Ann. 1553, 26 So. 460 (1889). Under the circumstances of the present ease, literacy is not a prerequisite to a witness being qualified as competent.
The trial judge is vested with considerable discretion in assessing whether a witness to a testament possesses a sufficient degree of proficiency in the language utilized, and if so satisfied, by a preponderance of evidence, that the witness understands the tenor of the testament, this court will not disturb that finding. Lewis v. DeJean, 251 So.2d 124 (3rd Cir. 1971). The trial judge herein was of the belief that Mrs. Callier understood the gist of what transpired. We find, in the present case, the required formality for a nuncupative will by private act was met, particularly in light of the fact that there was no suggestion of fraud, undue influence, deception, or mistake.
Appellant further objects that failure to call an absentee witness, Susan Gau-treaux, constitutes failure of the appellees to carry their burden of proof. However, this contention is without merit, as appel-lees presented the requisite number of witnesses pursuant to Code of Civil Procedure Article 2884.[2] Furthermore, Sybil Callier testified that her sister, Susan Gautreaux, spoke French very well and no contrary evidence was presented by appellants.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are assessed against appellant.
AFFIRMED.

. La. Civil Code Article 1581 provides:
“A nuncupative testament, under private signature, must be written by the testator himself, or by any other person from his dictation, or even by one of the witnesses, in presence of five witnesses residing in the place where the will is received, or of seven witnesses residing out of that place.
Or it will suffice, if, in the presence of the same number of witnesses, the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will.”
La. Civil Code Article 1582 provides:
“In either case, the testament must be read by the testator to the witnesses, or by one of the witnesses to the rest, in presence of the testator; it must be signed by the testator, if he knows how or is able to sign, and by the witnesses or at least by two of them, in case the others know not how to sign, and those of the witnesses who do not know how to sign, must affix their mark.
This testament is subject to no other formality than those prescribed by this and the preceding article.”

. Code of Civil Procedure Article 2884.
“Except as provided in Article 2886, the nun-cupative testament by private act must be proved by the testimony of a least three of the competent witnesses present when it was made. These witnesses must testify, in substance: that they recognize the testament presented to them as being the same that was written in their presence by the testator, or by another person at his direction, or which the testator had written or caused to be written out of their presence and which he declared to them contained his testament; and that they recognize their signatures and that of the testator, if they signed it, or the signature of him who signed for them, respectively, if they did not know how to sign their names.”
La. Civil Code Art. 2886 provides:
“If some of the witnesses to the nuncupative testament by private act, or to the act of superscription of the mystic testament, are dead, absent from the state, or cannot be located, so that it is not possible to procure the prescribed number of witnesses to prove the testament, it may be proved by the testimony of those witnesses then residing in the state and available.
If the notary and all of the subscribing witnesses are dead, absent from the state, or cannot be located, the testament may be proved by the testimony of two credible witnesses who recognize the signature of the testator, or of the notary before whom the act of superscription of the mystic testament was passed, or the signatures of two of the witnesses to the nun-cupative testament by private act, or to the act of superscription of the mystic testament.”