451 So.2d 1203 (1984)
The SUCCESSION OF Coman Simmons NORTON.
No. 83-CA-716.
Court of Appeal of Louisiana, Fifth Circuit.
May 30, 1984.
Bert K. Robinson, Wray, Robinson & Kracht, Baton Rouge, for Janet Norton Baum, et al.
Frank L. Dobson, Baton Rouge, for Succession of Coman Simmons Norton.
Before BOUTALL, CHEHARDY and KLIEBERT, JJ.
BOUTALL, Judge.
This appeal arises from a succession proceeding in which a divorced wife of the decedent seeks to annul a statutory will and set aside probate of the will.
Coman Simmons Norton, a resident of Jefferson Parish, died at Ochsner Foundation Hospital on November 22, 1981. A will was offered for probate on November 30, 1981, approved, and letters testamentary issued to the executrix. At the time of his death Mr. Norton was single and divorced from his third wife, Janet Ferracci Baum, who had remarried. Three daughters, born of his first marriage, and a son and daughter, minors at the time of his death, born during his marriage to Janet Baum, were his only descendants.
Mr. Norton owned interests in real estate and various businesses, the largest of which was a Ford agency in Baton Rouge. Sometime during the latter part of 1980 a conflict occurred between Mrs. Baum and Mr. Norton, during which Mrs. Baum sought to unseat her ex-husband as president of the corporation that owned the Ford agency. In order to prevent his ex-wife from gaining control of the corporation either as a legatee herself or indirectly through the inheritances of her two minor children, Mr. Norton undertook to make new testamentary dispositions.
On November 11, 1980, Mr. Norton executed a five-page statutory will in the office of Drew McKinnis, his long time attorney, in Baton Rouge. In it he left two-thirds of his estate to his five children and the disposable portion to a daughter, Caroline Christine Norton, born of his first marriage. He established a trust to receive the two minors' shares, of which Caroline Norton *1204 would be trustee. He also appointed Caroline Norton executrix of the will. On the fifth page, below the attestation clause, is a codicil that deletes "Article III, Disposable Portion" but affirms all other provisions of the will, followed by a second attestation clause, all duly signed.
Mrs. Baum filed timely a petition to annul probate, in which she sought to reinstate a will dated November 27, 1978, that left the disposable portion to herself and a special bequest to her son, Coman Simmons Norton, Jr. An amended petition joined her husband, the adoptive father of her children, as plaintiff. The attack is based on certain facial differences between the first four pages and the fifth page of the testament. The opponents allege that not all signatures were affixed at the same time; that the fifth page was prepared on a different typewriter from the one used for the first four; that the first four pages and the fifth page were not part of one act, the first four having been stapled to the fifth page at some time after the execution of the fifth page.[1] The notary, Drew McKinnis, predeceased Mr. Norton early in 1981.
Trial of the merits was heard on March 21, 1983, and on May 4, 1983 the trial judge rendered judgment upholding the validity of the will and dismissing the suit of its opponents at their cost.
The five issues raised by the appellant may be summarized as follows: did the proponent carry her burden of proof of the authenticity and validity of the will, sufficient to overcome the evidence of irregularities produced by the opponent, when she had the document in her possession immediately before submitting it to probate? In his reasons for judgment the trial judge said that "there has not been sufficient proof [of invalidity] shown to the Court to overcome the positive evidence presented as to the validity of the will." We agree.
Caroline Norton, the executrix, is an attorney and was well acquainted with Mr. McKinnis, discussed her father's affairs with him, and used his library for research on occasion. After McKinnis's death, in October, 1981, she checked out the original of her father's will from Mr. McKinnis's law firm, as evidenced by a receipt. The opponents' implication is that during the period October 8, 1981 to November 22, 1981 four signed pages were substituted for the original four, and then reattached to the original notarized page five.
The appellant's entire case relies on the testimony of a forensic document examiner, who studied the will thoroughly. He noted a number of inconsistencies between page five and pages one through four: Ten staple holes on the first four pages coincided with holes on the fifth page, but there were six extra holes on that page. Although Mr. Foley was certain that the same person signed all five pages, he found consistency in Norton's signature from page one through page four, but the signatures on page five showed deviations in the formation of some letters. He testified that a time interval between the signatures as alleged by the appellants could account for the differences, but admitted that a mere change in writing position could have caused the variation in signatures. Mr. Foley further noted differences in the margins and type face, the paper color, and photocopying differences on the final page as compared with the first four, and suggested that the first four pages had been taken from an older will.
The law is clear that the proponent of a disputed testament attacked within three months of probate bears the burden of proving its authenticity and compliance with all the formal requirements. La. C.C.P. 2932. Succession of Morgan, 257 La. 380, 242 So.2d 551 (1970). At the same time there is a strong presumption of validity of testaments and the validity of a will is to be upheld wherever possible. Succession of Morgan, supra, and cases cited therein. The court said in Succession of Kilpatrick, 422 So.2d 464 (La.App.2d Cir. 1982), writs denied 429 So.2d 126 (La.1983), at 475:

*1205 "... even though the burden rests upon the proponents, validity of the testament is still presumed until the contrary is established. Proof of non-observance of formalities must be exceptionally compelling in order to rebut the presumption of validity of testaments. Succession of Staggers, 254 So.2d 289 (La.App. 4th Cir. 1971); Succession of Dauzat, 212 So.2d 523 (La.App. 3rd Cir.1968)."
In Kilpatrick, in the face of strong testimony for both sides on the signing of a will by a terminally ill man, the court held that the formalities had been met and the court of appeal affirmed.
There is no question that the form of the will meets the requirements of LSA-R.S. 9:2442. As to its execution, the two secretaries and Ms. Norton all testified that they, Mr. Norton and Mr. McKinnis were all present during the signing and that the testator signed five pages consecutively at one sitting, with no interruption. The appellants make much of the secretary-witnesses' inability to swear that the four pages in question were the very ones they saw Mr. Norton sign. This argument is without merit, as witnesses are not required to recall the contents of the documents they sign. Riedel v. Sharp, 386 So.2d 1066 (La.App. 3rd Cir.1980).
The dissimilarities in typing and paper color are plain to the untrained eye, and are freely acknowledged by the proponents of the will. Ms. Norton testified that she had reviewed the prepared will before her father saw it and suggested to Mr. McKinnis that the extra bequest to herself was unnecessary and that it be removed. Rather than rewrite the entire document, the attorney chose to substitute a new fifth page and delete the bequest by adding a codicil. This explanation fully accounts for the differences in type face and page color noted by the expert document examiner.
There is no requirement in law that each page of a testament must be identical and typed at the same time, only that the document be complete at the time it is signed. The opponents of the will before us have produced no evidence to prove that the document submitted for probate in 1981 is different in any way from the document signed by the testator on November 11, 1980 and witnessed by the three persons who testified. We note further that the opponents made no speculation as to why the alleged substitution of pages would have benefited Ms. Norton to the detriment of Ms. Baum, the ex-wife, who clearly would not have been named in any post-separation will. To the contrary, the codicil denied an extra portion to Ms. Norton to the benefit of Ms. Baum's children.
Accordingly, the judgment appealed from is affirmed at appellants' cost.
AFFIRMED.
NOTES
[1] An allegation that the notary's bond was not in force was dropped later.