301 So.2d 711 (1974)
Succession of Paul Jules BARBE.
No. 4700.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*712 William L. McLeod, Jr., Lake Charles, for proponent-appellant.
Brame, Bergstedt & Brame by Frank M. Brame, Lake Charles, for opponent-appellee.
Before FRUGÉ, MILLER and WATSON, JJ.
FRUGÉ, Judge.
This is an action involving the validity of an instrument dated May 9, 1968, purporting to be the last will and testament of Paul J. Barbe. The testator was survived by his two children, Mrs. Barbara Barbe East and Mrs. Dorothy Barbe Rothchild. On its face, the instrument appears to be in the form of a statutory will, confected under the provisions of LSA-R.S. 9:2442, 9:2443. Mrs. East is the proponent of the validity of the will, and her sister, Mrs. Rothchild, is the opponent of its validity. Judgment was rendered by the trial court in favor of the opponent, decreeing the will to be null and void, and the proponent has appealed. We affirm.
The testator died on October 16, 1973. A petition was filed by Mrs. Rothchild for probate of an instrument purporting to be a will in olographic form dated July 13, 1953, and which included a prayer that Mrs. Rothchild be appointed dative testamentary executrix. An opposition to this instrument was filed by Mrs. East based in part on the allegation that she had been appointed executrix by the deceased in his last will and testament dated May 9, 1968. Mrs. Rothchild filed a petition opposing the probate of this last mentioned instrument alleging that the instrument had not been confected in accordance with the requirements of LSA-R.S. 9:2442, 9:2443. She alleged that the deceased had not signified the following in the presence of the notary and both witnesses: that the instrument was his will, that he was not able to sign his name because of some physical infirmity, that he was able to read and write the English language, and that he knew how to sign his name. She further alleged that the instrument was not read by or to the deceased and that the deceased was informed that the instrument was a power of attorney.
After hearing testimony the trial judge found that one of the subscribing witnesses, Mrs. Octave Ogea, was not present during the confection of the instrument. For this reason the instrument was held invalid as a will since the mandatory provisions of LSA-R.S. 9:2442 require that the instrument be signed by the testator in the presence of a notary public and two witnesses and that the testatory signify to the notary and both witnesses that the instrument is his will.
The judge accepted the testimony of Mrs. Ogea that she entered the room when the testator was hospitalized as Dr. G. E. Barham, the other subscribing witness, was signing the instrument. The trial judge found as a matter of fact that "the instrument had already been read to the testator *713 by the notary, the alleged acts of signification had already occurred, and Mr. Barbe had already affixed his mark thereto." (Tr. 34).
Mrs. East disputed the conclusion of the trial judge on the basis of the testimony of Dr. Barham, the testimony of the notary, Mrs. Gertrude O. Wilson, and the inconsistency of the testimony of Mrs. Ogea at the trial with that of her prior deposition.
During direct examination Dr. Barham was asked whether or not all parties were in the room at the time the testator affixed his mark to the instrument. His answer was as follows:
"I'm sure that we all were. I know there's a question about Mrs. Ogea, I mean, she was to the back, but Mrs. Wilson and I were standing there by his bed on the table when he fixed his mark." (Tr. 71).
Later during cross-examination Dr. Barham was asked the following question by counsel for the opponent to the will:
"Q. Now, Dr. Barham, you have indicated in your testimony just given that Mrs. Ogea was present during the confection of this instrument. I am asking you now if you can say that as a matter of fact and say that under oath, that she was present during the confection of this instrument, and that is during the entire time that you were there and while the instrument was being confected?
"A. I was there in the room.
"Q. Yes, sir. Yes, sir. Now, can you say that Mrs. Ogea was there during that time?
"A. I said Mrs. Wilson, that I could swear that she was there; and I could not swear Mrs. Ogea was there in the room all this time." (Tr. 78-79).
The trial judge in his written reasons for judgment found Dr. Barham's testimony to be of no help to the proponent of the will "since he could not say that Mrs. Ogea was in the room during the entirety of the proceeding." (Tr. 40).
The notary testified that Mrs. Ogea was in the room during the entirety of the proceeding. During direct examination by the attorney for the proponent of the will, Mrs. Wilson was asked if she recalled who was in the room at the time she presided as notary public. She stated positively in her answer that the testator's wife was present in the room and that Dr. Barham and Mrs. Ogea were in the room at the time Mr. Barbe signed the will with his "X".
In his written reasons for judgment, the trial judge stated that he believed that Mrs. Wilson was mistaken in her recollections as to the events that took place on the date in question. During cross-examination it was revealed that Mrs. Wilson knew nothing about the procedural requirements necessary for the valid execution of a statutory will. Her testimony indicated that she did not even know the instrument was a will until after she had entered the testator's room and had begun reading the instrument. The trial judge reached the following conclusion:
"Since it is doubtful that she knew prior to her commencement of the reading of the instrument that it was a will, and being unaware of the formal requirements for the valid execution of the will even had she known that it was a will, I must conclude that she made no determination of the presence of the witnesses prior to the commencement of the proceeding, and I thus cannot rely upon her recollection of an event which occurred more than five years ago." (Tr. 40).
Mrs. Ogea testified that she was standing outside the testator's hospital room in *714 the corridor when Dr. Barham and Mrs. Wilson entered the room. Later Mrs. East came out of the room and asked Mrs. Ogea if she would come in. At the time she entered the room Mrs. Ogea stated that Dr. Barham was in the act of signing the instrument, and she was asked to sign after Dr. Barham as a witness. When asked on direct examination why she was not in the room while the instrument was being executed, Mrs. Ogea gave the following answer:
"Because when Miss Barbara came that morningWell, when she did come to see her mother and her daddy about business, well, I would always leave the room, which I did. And I was in the hall; and while my back was turned I heard somebody talking behind me; and I looked and it was Dr. Barham and his nurse. And when they walked in, well, it still wasn't my duty to go in with them. So that's why I was out of the room, and that's when Miss Barbara asked me if I would come in and witness behind Dr. Barham. So I did." (Tr. 138).
In her deposition taken prior to trial Mrs. Ogea stated that she had been in the room but could not remember the events that transpired on the night of May 9, 1968.
Counsel for the opponent to the will pointed out in cross-examining Mrs. Ogea that she was unable to remember circumstances surrounding the date in question. He further attempted to impeach the witness's testimony by introducing into evidence a deed dated May 8, 1968, which was witnessed by Mrs. Ogea. During cross-examination Mrs. Ogea was unable to recall that she had witnessed the deed. She stated positively that she was not in the room at the time Mr. Barbe signed the instrument confected on May 9, but came into the room only as Dr. Barham was affixing his signature to the instrument. Counsel for the proponent argued that this testimony could not be relied on if she could not recall witnessing the instrument dated May 8. Mrs. Ogea explained that she was unable to remember during the deposition exactly what went on during the visit by the notary public on May 9. She stated that she worried and couldn't eat or sleep because she could not recall exactly what happened on the date in question. She explained that for about a week following the deposition she worried and prayed about why she could not remember what had been said and done in the room. Finally, she remembered and realized what had happened. The trial judge chose to believe the trial testimony of Mrs. Ogea over that of Dr. Barham and Mrs. Wilson. We find no manifest error in this respect on the part of the trial judge.
Counsel for the proponent of the will argues that the trial court erred in not giving the appropriate weight to the presumption as to the validity of the will.
Code of Civil Procedure Article 2903 reads as follows: "At the contradictory trial to probate a testament, its proponent bears the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of law." Article 2932 provides as follows: "The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law." These articles clearly show that the burden is on the proponent of the will in this case to prove that the formal requirements required under LSA-R.S. 9:2442, 9:2443 have been met. See for example Succession of Theriot v. Broussard, 165 So.2d 27 (La.App.3rd Cir. 1964).
*715 The attorney for the proponent of the will cites several cases in support of his statement that it is a policy of law to maintain the validity of a will if possible. However, those cases also state the proposition that the trial judge's findings of fact with reference to the following of the requirements of the confection of a will are not to be disturbed unless they are clearly and manifestly erroneous. For example, in Succession of Vegas, 236 So.2d 290 (La.App.4th Cir. 1970), the validity of a statutory will was attacked on the basis that the testator did not know how to read. The testimony was in conflict on this point, and the trial judge held that the evidence indicated that the testator did know how to read. The court of appeal affirmed the proposition that in determining the validity of a will, the trial judge's findings of fact are entitled to great weight and should not be disturbed unless they are clearly or manifestly erroneous. In Succession of Staggers, 254 So.2d 289 (La.App.4th Cir. 1971), the validity of a statutory will was attacked on the grounds that the notary public who passed the will, passed it at Oschner Foundation Hospital in Jefferson Parish and not in Orleans Parish, the parish of his domicile. The trial court held that the will was passed by the notary public in his office in Orleans Parish. The court of appeal stated as follows:
"The issue of the execution of the will is one purely factual in nature. The trial judge, being in a position to observe the attitude and demeanor of the witnesses, is better able to make determinations of credibility and his evaluation of the testimony must be respected. Unless manifestly erroneous, his findings should not be disturbed." 254 So.2d at 292.
Since we find no manifest error with the findings of fact on the part of the trial judge, his judgment will not be disturbed. The costs of this appeal are assessed against the appellant proponent of the will.
Affirmed.