COVINGTON, Judge.
This proceeding involves the validity of a statutory will. Melvin L. Augustus, the decedent, died on June 23, 1978, in Baton Rouge, Louisiana, where he was domiciled. A statutory will dated October 24, 1967, was probated on June 30, 1978, by the District Court and Maggie Augustus, the decedent’s wife, was confirmed as testamentary executrix in accordance with'the terms of the will.
Thereafter, on September 15, 1978, Mrs. Augustus filed a rule in opposition to a purported later will of the decedent, dated April 3, 1978 [1] which rule ordered that the later will could only be probated upon a contradictory hearing.
Then, on February 15, 1979, Marguerite Anderson, sister of the decedent, filed a petition to probate a photocopy of a purported original will dated April 3, 1978. The petition alleged that the Notary Public before whom the will was executed had made a photocopy of the original will and had mailed the original to the law offices of the attorney representing the proponents of the 1978 will, but that the original document was lost in the mail. The copy purports to be statutory in form and purports to bear the signatures of Hazel Stewart and Vernon Scott as witnesses, M. L. Augustus as testator and Julius X. Johnson as Notary Public. The petition asked for a rule to show cause against the executrix of the estate of Melvin L. Augustus why the 1978 will should not be probated. Later, Lillian Louise Augustus Thompson, the daughter of the decedent, was substituted as party plaintiff in lieu of Marguerite Anderson.
The contradictory hearing was held; and after taking the matter under advisement, the trial court, assigning written reasons, rendered judgment in favor of Maggie Augustus, widow of the decedent and executrix, defendant-in-rule, and against Lillian Augustus Thompson, daughter of the decedent, recalling, vacating and setting aside the rule. The effect of the judgment was to refuse to admit the 1978 will to probate. The basis for the trial court’s decision is set out in its reasons for judgment as follows:
“The witnesses and notary all testified. Vernon Scott (one of the witnesses) indicated that when he arrived at the notary’s office, decedent had already signed his name and that he and Hazel Stewart (the other witness) and Johnson (the notary) signed the paper thereafter. Of course, the requirements for a statutory will are that the testator, witnesses and notary all sign in one another’s presence. Additionally, the crucial factor comes from an analysis of decedent’s signature. A handwriting expert, N. D. Molligan had access to checks signed by decedent bearing the same date as the alleged lost will. A comparison of the signature specimens appearing on said checks with the signature appearing on the copy of the will clearly lead to the conclusion that the signatures are not the same. The signatures on the check show a stronger and firmer hand than the signature on the *1174 copy of the will. The notary testified decedent was nervous and agitated on the date in question but the witnesses Hazel Stewart and Vernon Scott, indicated he was not unusually nervous or distraught. “The burden of proof is upon the mover, and she has failed to carry the burden in the court’s opinion.”
Plaintiff-in-rule appealed. We affirm.
The issues tendered on this appeal are factual in nature and relate to the proper confection and the validity of the will purportedly made in statutory form on April 3, 1978. With respect to appeals involving factual questions, it is well established that appellate courts are to accord great weight to the trial court’s findings which will not be disturbed unless manifestly erroneous. Succession of Zinsel, 360 So.2d 587 (La.App. 4 Cir. 1978), writ denied, 363 So.2d 72 (La. 1978); Succession of Bradford, 130 So.2d 702 (La.App. 2 Cir. 1961); Succession of Barbe, 301 So.2d 711 (La.App. 3 Cir. 1974).
This is an attempt by the plaintiff-in-rule to probate a photocopy of a will in statutory form, the original will having been allegedly lost in the mail. It is, of course, conceded that if a will is accidentally lost, it may be proven if the necessary proof is available. With respect to the burden of proof when, as in the instant case, the probate of the will is opposed ab initio, the proponent of the will bears the burden of proving by a preponderance of evidence that the document was properly confected and valid. Succession of Staggers, 254 So.2d 289 (La.App. 4 Cir. 1971); Succession of Lirette, 5 So.2d 197 (La.App. 1 Cir. 1941).
LSA-C.C.P. art. 2903 reads as follows:
“At the contradictory trial to probate a testament, its proponent bears the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of law.”
LSA-C.C.P. art. 2932 provides as follows:
“The plaintiff in an action to annul a probated testament has the burden of proving the invalidity thereof, unless the action was instituted within three months of the date the testament was probated. In the latter event, the defendants have the burden of proving the authenticity of the testament, and its compliance with all of the formal requirements of the law.”
These procedural articles show that the burden is on the proponent of the will, the plaintiff-in-rule in the instant case, to prove that the formal requirements of LSA-R.S. 9:2442,2443 have been met. See Succession of Barbe, supra.
LSA-R.S. 9:2442 requires among formalities, that a statutory will be signed by the testator in the presence of a notary and two witnesses, and that the notary and both witnesses sign a declaration to that effect in the presence of the testator and each other. The attestation clause is not self-proving; witnesses in person (or by affidavit) must be produced at the probate to prove the will. LSA-C.C.P. art. 2887; succession of Porche, 288 So.2d 27 (La.1973).
The will in question bears the signature of Julius X. Johnson as notary and the signatures of Hazel Stewart and Vernon Scott as witnesses. At the hearing, Mr. Johnson testified that the original will was lost in the mail when he sent it, without cover letter and not by registered mail, to the attorney for plaintiff-in-rule. In response to questions, he testified that the will was executed in his office; that he, the decedent, and the two witnesses were all in his office at the same time; and that he saw the decedent and the two witnesses sign the will. He was not asked if (and did not testify that) they all signed the will in one another’s presence. He was also not asked if the witnesses saw the testator sign.
Mrs. Stewart testified that she, Mr. Scott, and the decedent signed the will in the presence of each other. She did not testify that (and was not asked if) the notary also signed the will in the presence of the others.
Mr. Scott indicated that when he arrived in the notary’s office, the testator had already signed and that Mrs. Stewart arrived after Scott did, and the witnesses signed the document thereafter.
*1175 The decedent’s sister and daughter both testified that the decedent had informed them of the will, that they had seen the original will, and that the photocopy offered for probate was a copy of that original. They, however, were not present when the will was purportedly executed and gave no testimony relative to the confecting of the will.
Defendant-in-rule offered the testimony of the decedent’s accountant, who stated that she personally saw the decedent sign a particular check and identified the signature thereon as his. Mrs. Augustus also identified the signatures on several checks as those of her late husband. The checks were admitted in evidence. They date from August 18, 1970, to April 21, 1978, and include three checks dated April 3,1978, the same date that the will was allegedly executed.
Mr. Nicholas D. Molligan was qualified and accepted as an expert witness on the subject of handwriting analysis. He testified that all of the cheeks were signed by the same person and that this person was not the one who signed the will in two places as “M. L. Augustus.” Another expert on the subject, William J. Wisner, was not able to express an opinion concerning the signing, because the original will was not available. 'Mr. Molligan, however, opined that a valid opinion as to authenticity can be rendered on the basis of a photocopy if significant differences exist between the documents compared. On the other hand, he stated, if no significant differences exist, a conclusion cannot be reached. He testified that, in this instance, the signatures on the checks do bear significant differences from the signatures on the will. He concluded that the person who signed the will was “definitely not the same individual” who signed the checks.
The trial judge observed that:
“A comparison of the signature specimens appearing on said checks with the signature appearing on the copy of the will clearly lead to the conclusion that the signatures are not the same. The signatures on the checks show a stronger and firmer hand than the signature on the copy of the will.”
The trial judge concluded that the signature on the alleged will was not that of the decedent and that the will had not been confected in accordance with the requirements for a will in statutory form since it was not signed by the testator in the presence of the witnesses. Thus, the trial court held the will invalid and decided that it could not be admitted to probate. The record supports this conclusion.
Accordingly, the judgment appealed is affirmed at the appellant’s costs.
AFFIRMED.

. She alleged, on information, that the purported will was dated March 10, 1978, and was in the possession or under the control of Mrs. William A. Thompson, daughter of the testator.