527 So.2d 559 (1988)
SUCCESSION OF C. Dulva THIBODEAUX.
No. 87-567.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
Charles Thompson, Abbeville, for appellant.
B.J. Duplantis and Blaise Sonnier, Arthur Mouton, Lafayette, for appellee.
Before DOMENGEAUX, STOKER and KING, JJ.
*560 STOKER, Judge.
This is an action to annul the Last Will and Testament of C. Dulva Thibodeaux. The decedent executed the statutory will in question on September 19, 1985. He subsequently died on April 21, 1986. The will was probated on April 23, 1986. On October 22, 1986 the plaintiff-appellant herein, Namaze Thibodeaux, filed the action to nullify her father's will in the succession proceeding. The plaintiff alleges that the will is an absolute nullity because one of the subscribing witnesses did not observe the signing of the will by the testator, notary and other witness. She also alleges that no declaration was made by the testator, in the presence of the witness, that the document was his last will and testament.
After a hearing on the rule, the trial court found that the plaintiff-mover failed to meet her burden of proving the invalidity of the will pursuant to LSA-C.C.P. art. 2932 and denied the action of nullity. A judgment was rendered in accordance with the trial court's findings. It is from this judgment that plaintiff appeals.
Plaintiff asserts by way of this appeal that the trial court erred in holding that the probated will dated September 19, 1985 was executed in accordance with the requirements of LSA-R.S. 9:2442.

FACTS
On September 19, 1985 C. Dulva Thiboeaux executed a last will and testament, in statutory form, which was prepared and notarized by Michael J. Herpin. The witnesses who signed the document were Gaulman Abshire, M.D., a friend of the testator, and Brenda Fuselier, the testator's sitter. At the time that the will was executed, Mr. Thibodeaux was suffering from numerous health problems and was living at the home of his deceased daughter, Zita Thibodeaux Broussard. Mr. Thibodeaux was being attended to there by Mrs. Fuselier and his grandson, Gerald Broussard.
The will made certain bequests to Mr. Broussard and to the testator's two living children, Dalton Thibodeaux and Namaze Thibodeaux. Namaze Thibodeaux and Gerald Broussard were named as joint testamentary executors in the will.
Mr. Broussard petitioned for the probate of the statutory testament on April 23, 1986. An affidavit signed by Michael J. Herpin and Brenda Fuselier was attached to the petition for probate. The affidavit set forth that all of the formalities had been observed in the execution of the will by the notary and subscribing witnesses. The will was ordered probated on the same day. Thereafter, Mr. Broussard petitioned to be appointed co-executor of the decedent's succession. Mr. Broussard was confirmed as testamentary executor. Namaze Thibodeaux subsequently renounced her appointment as testamentary co-executor in August of 1986. The action to nullify the statutory will was instituted in October of 1986.

WERE THE FORMALITIES REQUIRED BY LSA-R.S. 9:2442 OBSERVED?
We first note in this discussion that no question of testamentary capacity was raised by the plaintiff in this proceeding. Plaintiff has also not alleged any error in the form of the statutory will. The will appears to be valid as to the form and contents required by LSA-R.S. 9:2442. The only issue before us for review is whether the will was properly executed in accordance with LSA-R.S. 9:2442.
LSA-R.S. 9:2442 provides, as follows, that:
"A. A statutory will may be executed under this Section only by a person who knows how to sign his name and knows how to and is physically able to read.
B. The statutory will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will and shall sign his name at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator *561 has signed this will at the end and on each other separate page, and has declared or signified in our presence that it is his last will and testament, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of__________, 19___.'
C. If the testator is unable to sign his name because of a physical infirmity, the will shall be prepared in writing and shall be dated and executed in the following manner:
(1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his last will, that he is unable to sign because of a physical infirmity, and shall then affix his mark at the end of the will and on each other separate page of the instrument.
(2) In the presence of the testator and each other, the notary and the witnesses shall then sign the following declaration, or one substantially similar: "The testator has declared that he knows how to sign his name but is unable to sign his name because of a physical infirmity and he has affixed his mark at the end and on each other separate page of this will and declared or signified in our presence that this is his last will and testament and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of__________, 19___.'
D. The statutory will authorized by this Section may not be executed in braille or other similar mode of expression.
E. A competent witness for the purposes of this Section is a person who meets the qualifications of Civil Code Articles 1591 and 1592, and who knows how to sign his name and to read the required attestation clause, and is physically able to do both."
In order to annul a statutory testament which has been probated in accordance with LSA-C.C.P. art. 2887, the plaintiff must bring a direct action in the succession proceeding. LSA-C.C.P. art. 2931. The plaintiff who institutes an action to annul a probated testament later than three months from the date the testament was probated has the burden of proving the invalidity of the testament. LSA-C. C.P. art. 2932. Moreover, there is a presumption in favor of the validity of testaments in general and proof of the nonobservance of formalities must be exceptionally compelling to rebut that presumption. Succession of Caprito v. Mayhew, 478 So. 2d 243 (La.App. 3d Cir.1985); Succession of Remont, 462 So.2d 224 (La.App. 1st Cir. 1984).
The plaintiff herein has alleged that (1) the testator did not declare the document to be his last will and testament in the presence of Brenda Fuselier and (2) Brenda Fuselier did not observe the testator, notary and other witness sign the document. The plaintiff admits in brief that an actual verbal declaration by the testator is not required. See Succession of Guidry, 160 So.2d 759 (La.App. 3d Cir.1964). However, plaintiff maintains that some form of acknowledgment or indication by the testator must be made in addition to the declaration in the attestation clause.
The first mandatory requirement of LSA-R.S. 9:2442 is that the testator shall declare or signify to the notary and witnesses that the instrument is his last will. The Fourth Circuit Court of Appeal discussed this requirement in Succession of Morgan, 230 So.2d 323 (La.App. 4th Cir. 1970), reversed, 257 La. 380, 242 So.2d 551 (1971). Citing Succession of Guidry, supra, the court said, "One may `signify' by merely nodding his head ... or presumably by any other action, perhaps even the signing itself, if under the circumstances the action imports the required signification." Succession of Morgan at 325. The Supreme Court in its opinion on reversal went on to discuss the fact that this requirement is the common law requirement of "publication," but that LSA-R.S. 9:2442, while requiring publication, does not particularize its manner or method. 242 So.2d at 553.
Dr. Gaulman Abshire testified at the trial on the rule that he was asked to witness the signing of the will by Mr. Herpin, in the event any question of Mr. Thibodeaux's *562 testamentary capacity arose. Dr. Abshire arrived at the Thibodeaux residence at approximately the same time as Mr. Herpin. Mrs. Fuselier was already at the house. Dr. Abshire testified that Mr. Thibodeaux was seated in an "easy chair" on one side of the den area when he arrived. Dr. Abshire and Mr. Thibodeaux conversed briefly before Mr. Herpin instructed him and Mrs. Fuselier that they were needed to witness the signing of the will. Dr. Abshire testified that Mr. Herpin spoke with Mr. Thibodeaux, explaining to him that this was the will he had prepared with the corrections. Dr. Abshire said that Mr. Thibodeaux did not declare the document to be his last will and testament, but that he signed the documents presented to him by Mr. Herpin.
Mr. Herpin testified to substantially the same scenario, except that he testified that Mr. Thibodeaux answered yes to his question concerning whether the will reflected what he wanted it to. Mr. Thibodeaux then signed the will.
Contrary to the testimony of Dr. Abshire and Mr. Herpin, Mrs. Fuselier denied that she was given any instructions by Mr. Herpin and testified that she did not see the testator sign the will. She also testified that the testator did not declare the document to be his last will and testament and she did not know if the will was read to the testator.
Clearly the evidence preponderates that no verbal declaration was made, and apparently there was no other action except signing of the will itself. We must therefore decide if, under the circumstances herein, the trial court was manifestly in error in finding that the action of signing alone imported the required signification. The trial court's factual findings are accorded great weight and will not be disturbed on appeal absent finding manifest error. Succession of Augustus, 400 So.2d 1172 (La. App. 1st Cir.1981).
The testimony of Dr. Abshire and Mr. Herpin is consistent with respect to the fact that some discussion concerning the contents of the document was had with Mr. Thibodeaux prior to him signing the will. The trial court apparently discounted the testimony of Mrs. Fuselier concerning the events surrounding the execution of the will. We cannot say that the trial court was clearly wrong in its factual determination. This argument is therefore without merit.
As concerns the plaintiff's second contention that the testator did not sign in the presence of Mrs. Fuselier, we will again examine the testimony adduced at the trial on the rule. Mrs. Fuselier testified that she did not see the testator, Mr. Herpin and Dr. Abshire sign the will. She testified that she was present during the execution of the will, but she was watching television and paying no attention to what went on around her. Mrs. Fuselier said that she was asked to come to the table and sign the will. She testified that the testator, Mr. Herpin, Dr. Abshire and Gerald Broussard were all sitting around the table and they were present when she signed the will.
Dr. Abshire testified that he was not aware of exactly where Mrs. Fuselier was, but that she was in the room. He stated that after the testator signed the will while sitting in his "easy chair," Mr. Herpin brought the will to the table for them to sign. He testified that he did not remember seeing Mrs. Fuselier or Mr. Herpin sign the will.
Mr. Herpin testified that everything took place in front of Dr. Abshire and Mrs. Fuselier and that he asked them to come to the table to sign the will after the testator signed it. He testified that Dr. Abshire signed and Mrs. Fuselier was behind him. Mr. Herpin also testified that Mr. Thibodeaux never left his "easy chair" and that the television was not on during these events. He had instructed the witnesses to pay attention and assumed that they did so.
Mrs. Fuselier also swore in her affidavit filed with the petition for probate that the parties witnessed the testator's signature and each other's. Her testimony at trial was contrary to the attestations made in the will and in the affidavit. Also the testimony disclosed some particular loyalty of Mrs. Fuselier to the plaintiff which prompted her to call plaintiff and notify her of the will signing the next day. Mrs. *563 Fuselier's later recollection of events is inconsistent with the overall testimony of the other witnesses and her affidavit. Though Dr. Abshire's recollection of the events is somewhat vague, they cannot necessarily be construed to support Mrs. Fuselier's version of events. A witness to a will is not, in fact, expected to have a complete and independent recollection of every event that occurred at the signing of the will. Riedel v. Sharp, 386 So.2d 1066 (La.App. 3d Cir.1980).
The totality of the testimony and evidence supports the trial court's finding that the formalities required by LSA-R.S. 9:2442 were observed. We do not find any manifest error in this finding of fact. The trial court's conclusion that plaintiff failed to carry her burden of proving the invalidity of the will is correct.
For the reasons stated herein, the judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant.
AFFIRMED.