# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-329

## SUCCESSION OF LINDA F. ENOS

************

## APPEAL FROM THE
## THIRTIETH JUDICIAL DISTRICT COURT
## PARISH OF VERNON, DOCKET NO. 97,870
## HONORABLE C. ANTHONY EAVES, DISTRICT JUDGE

************

## SYLVIA R. COOKS
## JUDGE

************

Court composed of Sylvia R. Cooks, Billy H. Ezell and Candyce G. Perret, Judges.

**REVERSED AND REMANDED.**

**Kelvin G. Sanders**
**P.O. Box 13922**
**Alexandria, LA 71315-3922**
**(318) 443-1444**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
  **John S. Enos**

**COOKS, Judge.**

## FACTS AND PROCEDURAL HISTORY

John Enos (John) and Linda F. Enos (Linda) were married for nearly twenty-nine years when she died on March 7, 2019. At the time of Linda's death none of her surviving heirs were aware of any testament disposing of her estate. One of her sons, Mark Alan Ashworth (Mark), filed a Petition for Possession of Linda's intestate estate and on August 27, 2019, the trial court signed a Judgment of Possession recognizing Mark as sole heir of Linda's estate.

On November 13, 2019, Mark notified Linda's husband, John, that he must vacate the home in Leesville where he and Linda lived for many years during their marriage. Approximately one week later John discovered two documents which appeared to be olographic wills handwritten by Linda. In these writings Linda divided her estate equally between her four children and instructed that John be allowed to continue living in the matrimonial home until his death or remarriage. John filed a "Petition to Reopen Succession, Probate Olographic Wills, and for Writ of Preliminary and Permanent Injunction." Based upon its review of the exhibits submitted as stipulated evidence, and the arguments submitted in briefs by both sides, the trial court denied John's petition finding that neither of the documents are "an olographic will in conjunction with the law of the State of Louisiana." John appeals the trial court ruling asserting the trial court erred in denying his petition. No answer or brief opposing the appeal has been filed.

## LEGAL ANALYSIS

The trial court did not articulate any reasons for its ruling. In his memorandum in opposition to John's petition Mark asserted the documents presented are not a valid olographic will because there is no signature by Linda at the end of either document. Mark did not allege that the handwriting was not Linda's and he did not allege any defect with the dates written on the documents. The

Louisiana Civil Code recognizes two forms of testaments, olographic and notarial. La.Civ.Code art. 1574. Louisiana Civil Code Article 1575 provides for olographic testaments:

> A. An olographic testament is one entirely written, dated, and signed in the handwriting of the testator. Although the date may appear anywhere in the testament, the testator must sign the testament at the end of the testament. If anything is written by the testator after his signature, the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament. The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.
>
> B. Additions and deletions on the testament may be given effect only if made by the hand of the testator.

The Louisiana State Supreme Court has held that "[f]or an olographic will to be valid, the testament must be written, signed and dated in the handwriting of the testator. La. Civ.Code art. 1575 (formerly La. Civ.Code art. 1588)." *In re Succession of Aycock*, 02-701, p. 1 (La.5/24/02), 819 So.2d 290, 290. In *In re Succession of Boada*, 13-234, p. 4 (La.App. 5 Cir. 11/19/13), 130 So.3d 350, 352, the Louisiana Fifth Circuit Court of Appeal noted that "[t]he only additional requirement is that the document itself must evidence testamentary intent. *In re Succession of Carroll,* 09–219 (La.App. 5 Cir. 12/8/09), 30 So.3d 11, 17." It is also well established that "[w]hen a testament is written in olographic form without the aid of counsel, the intention of the testator is to be given paramount importance." *In re Succession of Caillouet*, 05-957, p. 3 (La.App. 4 Cir. 6/14/06), 935 So.2d 715, *writ denied* 06-1732 (La.10/6/06), 938 So.2d 85 (citing *Succession of Diaz,* 617 So.2d 34 (La.App. 4 Cir.1993)

Louisiana law has long recognized the olographic will as the simplest type of testament for a lay person to create without the assistance of a lawyer or notary. It remains one of only two forms currently recognized by Louisiana law.

The primary advantage of the olographic will is its simplicity and strangely enough because of this simplicity it is also one of the most foolproof methods of confecting a will. Its simplicity is such that the testator can make this will at any time or at any place and without outside assistance in the form of witnesses or even counsel. Thus the "written, dated, signed" requirement should be understood in ordinary terms. If we inject technicalities into these simple requirements, then we rob the olographic will of its principal asset—simplicity.

*Succession of Gaudin*, 140 So.2d 384, 389 (La.App. 1 Cir. 1962).

Superimposed upon Louisiana courts' efforts when applying the statutory requirements for olographic and notarial wills to determine validity of such instruments is the fundamental notion that *the law favors the validity of wills*.

The Supreme Court has given conciseness and native logic to this basic principle that the law favors the validity of will:

To wrest a man's property from the person to whom he has given it, and divert it to others to whom he has desired to withhold it, is a most violent injustice amounting to nothing less than postmortem robbery, which no Court should sanction unless thoroughly satisfied that the testator was legally incapable of making a will.

*Kingsbury v. Whitaker*, 32 La.Ann. 1055, 1062; *McCarty v. Trichel*, 217 La. 444, [454], 46 So.2d 621, 624.

*Gaudin*, 140 So.2d at 391.

In *Succession of Hinds*, 06-846, pp. 7-8, (La.App. 3 Cir. 2/28/07), 952 So.2d 842, 846–48 (emphasis added), this court focused on the intent of the testator in its reasoning upholding a codicil to a will rejecting the challenge to the codicil for lack of strict adherence to the formality requirements for notarial wills:

Based on the facts of this case, we find that the codicil is a valid portion of Mr. Hinds's will. *This is because we are, foremost, guided by the principle which holds that the intent of the testator is the single most important consideration in the interpretation of a legacy*. La.Civ.Code art. 1611; *see also, Succession of Thibodeaux,* 527 So.2d 559 (La.App. 3 Cir.), *writ denied*, 532 So.2d 151 (La.1988). **Moreover, the law requires us to interpret this instrument "in a sense in which it can have effect, rather than in one in which it can have none." La.Civ.Code art. 1612.** These principles have been translated into an analysis that requires us to seek the establishment of exceptionally compelling proof of the non-observance of formalities in these documents' execution, before we can find that the presumption of the validity of a testament has been overcome. *Thibodeaux,* 527 So.2d 559.

The supreme court, in *Succession of Guezuraga,* 512 So.2d 366, 368 (La.1987) (citation omitted), addressed the appropriateness of these principles of liberality:

> [W]e are not required to give the statutory will a strict interpretation. The Legislature adopted the statutory will from the common law in order to avoid the rigid formal requirements of the Louisiana Civil Code. "The minimal formal requirements of the statutory will are only designed to provide a simplified means for a testator to express his testamentary intent and to assure, through his signification and his signing in the presence of a notary and two witnesses, that the instrument was intended to be his last will." *Succession of Porche v. Mouch,* 288 So.2d 27, 30 (La.1973). In accordance with this legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will, if at all possible, as long as it is in substantial compliance with the statute. Note, Louisiana's Statutory Will: The Role of Formal Requirements, 32 La.L.Rev. 452, 453 (1972). In deciding what constitutes substantial compliance, the courts look to the purpose of the formal requirements-to guard against fraud.

> Where the departure from form has nothing whatsoever to do with fraud, ordinary common sense dictates that such departure should not produce nullity. It was the intent of the legislature to reduce form to the minimum necessary to prevent fraud. It is submitted that in keeping with this intent, slight departures from form should be viewed in the light of their probable cause.

In this case the person opposed to probating Linda's olographic will focused on the language of La.Civ.Code art. 1575(A) which states "the testator must sign the testament at the end of the testament." Upon its examination of the documents submitted the trial court simply concluded the instrument did not comport with Louisiana law. The record does not disclose the basis for the trial court's conclusion, but the only argument put forth by the opponent of the will was that Linda's signature did not appear at the end of the document, thus we can only surmise that this was the basis of the trial court's ruling rejecting John's petition to probate what he asserts is Linda's last will and testament. We hasten to add that the recited provision of La. Civ.Code art. 1575 (emphasis added) is modified by language immediately following the recited provision:

4

A. If anything is written by the testator after his signature, *the testament shall not be invalid and such writing may be considered by the court, in its discretion, as part of the testament.* The olographic testament is subject to no other requirement as to form. The date is sufficiently indicated if the day, month, and year are reasonably ascertainable from information in the testament, as clarified by extrinsic evidence, if necessary.

B. Additions and deletions on the testament may be given effect only if made by the hand of the testator.

We have examined the documents submitted below to ascertain whether there is substantial compliance with the Louisiana Civil Code's requirements that the instrument must be written, dated, and signed by the testatrix for it to constitute a valid olographic will. There is no assertion that the date is somehow improper nor is there any allegation that these documents are not in Linda's handwriting. Further, no one asserts that the signature at the top of the second page is not Linda's signature. In fact, the affidavits submitted attest that this is Linda's handwriting, and it is her signature. Thus, the first writing by Linda dated July 29, 2009, is written, dated, and signed by Linda. Linda's intent could not be clearer. She sets forth in this document how she desires her property to be disposed of "upon her death." This document is written on short paper in a spiral notebook and begins with the date "July 29, 2009." Under the express provisions of Article 1575 the date may appear anywhere in the instrument. Following the date Linda writes:

I Linda F. Enos wishes(sic) to leave all my wordly (sic) goods to my Four children to be equally divided. (Death Policy)

This encluds (sic) my House, Land (2 acreas) (sic), all household products, all yard products, my car (2006 Chevy Impala Delux.

I Linda F. Enos wishes (sic) upon my death to let my husband John S. Enos the rights to live in my house until he marries or death.

My children:

Tammy Banks, Houston, Tx.
Kimberly Vasquez, Dallas, Tx.
Mark Alan Ashworth, Leesville, La.
Scott A. Ashworth, Arura, Col.

Husband, John S. Enos
Leesville, La.

This wording completes the first page and completes Linda's two bequests. Linda's signature appears on the first line of the second page. Thus, the will is dated, wholly handwritten by Linda, and is signed by her at the end. As Article 1575(A) provides, the language which follows Linda's signature does not invalidate the will. The next line after Linda's signature reads: "Two acreas (sic) on 1151 Roselee Lane, Leesville, LA. 71446" which is followed by a list of "yard equipment" and a list of "lawn furniture" as well as the listing of "1 Ford Ranger Truck (John)" and "1 Bass Boat (John)." The next item on the list is "K-Mart Pencion (sic) Plan (1980-1990) (divided 4 children)." This language does nothing more than provide more specific information in conjunction with Linda's bequests dividing her estate equally between her four children and further identifying her property. All requirements of form for an olographic will are met by Linda's will dated July 29, 2009. The trial court legally erred in concluding otherwise. The fact that Linda's placement of her signature at the top of the second page immediately following the bequests rather than squeezed into the remaining space of the first page does not amount to a lack of formality that would invalidate her will.

> In accordance with this legislative intent, courts liberally construe and apply the statute, maintaining the validity of the will if at all possible, as long as it is in substantial compliance with the statute. Note, Louisiana's Statutory Will: The Role of Formal Requirements, 32 La.L.Rev. 452, 453 (1972). In deciding what constitutes substantial compliance, the courts look to the purpose of the formal requirements- to guard against fraud.

*Succession of Hinds*, 952 So.2d at 847.

There is no assertion here of any fraud by anyone. Mark asserted below that the only reason this document should not be recognized as Linda's will is, because in his opinion, the physical placement of her signature is not strictly in compliance with the code's command that the document be "signed at the end." He did not assert

that this instrument was somehow fraudulently confected, and he did not assert that

it does not express Linda's testamentary desires for disposition of her property at her

death. To the contrary, the document expressly states that this is Linda's

testamentary instruction to take effect upon her death. Our conclusion, that the

placement of Linda's signature following her bequests, though it is physically placed

at the top of the next page, meets the requirement that she sign her olographic will

and do so at the end, is consistent with the Louisiana Civil Code and the

interpretative jurisprudence.

In *In re Succession of Caillouet*, 935 So.2d 713, the appellate court found that

the testatrix's signature as simply "Auntie" was a valid signature. The court stressed

that when a will is written without the assistance of an attorney the court must give

the testatrix's intent paramount importance.

> On the issue of whether or not the word "Auntie" qualifies as a signature, we refer to this Court's decision in *Succession of Bacot,* 502 So.2d 1118 (La.App. 4 Cir.1987). In that case, a man who was known by his middle name signed an olographic will with his middle and last name only. An opponent of the will argued that the signature was invalid because the testator did not sign his full legal name. This Court agreed with the trial court's finding that the signature was valid, stating that the fact that a testator does not use his full legal name does not render his signature invalid as long as the actual identity of the testator can be ascertained. *Id*. at 1122–1123, citing *Succession of Cordaro,* 126 So.2d 809 (La.App. 2 Cir.1961).

> In *Succession of Cordaro,* 126 So.2d 809 (La.App. 2 Cir.1961), a woman made a disposition of her property in a document in the form of a letter addressed to her sister, and signed it using her first name only. In agreeing with the trial court's finding that the signature was sufficient for the document to qualify as an olographic will, the Second Circuit held that the sole object of a signature is the identification of the testator, and that any signature that will identify the testator as the author of the testament will suffice. Id. at 813.

> In this case, the evidence presented at trial included testimony from Ms. Caillouet's niece, Jo Ann Lotz, who stated that her children and grandchildren called Ms. Caillouet "Auntie" when they were young. Additionally, Ms. Caillouet's cousin, Ruth Demandre, testified that Ms. Caillouet always referred to herself as "Auntie" when speaking of her nieces and nephews and their children. The trial court obviously found this evidence credible, and we find no error in that determination.

When a testament is written in olographic form without the aid of counsel, the intention of the testator is to be given paramount importance. *Succession of Diaz,* 617 So.2d 34 (La.App. 4 Cir.1993). The trial court found that Ms. Caillouet intended to execute a last will and testament and intended for the word "Auntie" to serve as her signature, thereby fulfilling the signature requirement of La. C.C. article 1575. The record establishes that the word "Auntie" sufficiently identified Ms. Caillouet as the author of the testament.

Considering the above-discussed cases on the issue of signatures in olographic wills, along with the evidence presented at trial on the issue of Ms. Caillouet being known as "Auntie," we find no manifest error in the trial court's ruling that the handwritten document meets the form requirements of an olographic testament, and that the validity of the olographic testament was proven.

*In re Succession of Caillouet*, 935 So.2d at 716.

The next document is dated "Aug (which is lined over) Sept. 8, 09" on the first line. This document is written on longer sheets of paper which are not from a spiral notebook. On the second line of this document it states:

Linda Faye Enos (Ashworth)
Will of Property (Born Elmore)

The document continues with the next paragraph stating

I Linda Faye Enos born in Bonifay, Fl. On Aug. 4, 1944.
This is my will to have all my property divided "equal"
among my four children.

The document continues with a description of Linda's property and contents of her home. It again provides for John's use of the home in Leesville "until he dies" and further provides:

All the appliances we bought together are to remain here at our home.
All yard eqpt. are to remain here. Riding lawn mower, tiller, weed eater etc.
The Chevy Impala 2006 Ford Ranger
Truck 2002 Boat (Bass) all are
Property of John S. Enos.

Unlike the first document, this document is not signed by Linda and does not contain any language expressing testamentary intent. This document simply sets forth Linda's desire already expressed in her will dated July 29, 2009, and its statements are consistent with that will. This page cannot be considered a codicil to

8

Linda's will dated July 29, 2009, because a codicil must also be in one of the two forms provided for wills.

> The term "codicil," is synonymous with "bequest" or "disposition." *Oglesby v. Turner,* 124 La. 1084, 50 So. 859 (1909).
>
> Historically, a codicil has been considered as an addition to a will and is a part of it. *Succession of Ledet,* 170 La. 449, 128 So. 273 (1930). The current Civil Code does not speak expressly of the term "codicil," but does state that any donations mortis causa must be made in one of the forms of testaments authorized by law. La.Civ.Code art. 1570.

*Succession of Hinds*, 952 So.2d at 846 (footnote omitted).

Although this document is in Linda's handwriting and is properly dated, it is not signed by Linda and, therefore, is not a valid olographic will or olographic codicil to Linda's will dated July 29, 2009.

For the reasons stated we find the document dated July 29, 2009, is a valid olographic will written, signed, and dated by Linda Enos. The judgment of the trial court is reversed, and the case is remanded for further proceedings consistent with this ruling. All costs of these proceedings are assessed against Mark Ashworth.

**REVERSED AND REMANDED**.